GRISWOLD *v.* HAZARD and others.

(*Circuit Court, D. Rhode Island.* September 10, 1886.)

INJUNCTION—DECREE OF COURT OF GENERAL EQUITY JURISDICTION,

The decree of a court of general equity jurisdiction, in a case where the defendant therein was personally served with process within the jurisdiction of the court, and where the court appears to have had jurisdiction of the subject-matter of the bill, will not be impeached upon a bill denying only the existence of the facts required to justify the plaintiff therein in invoking the exercise of that jurisdiction. See *Hazard* v. *Griswold,* 21 Fed. Rep. 178.

Demurrer to Bill.

The opinion states the facts.

*A. Green* and *S. R. Honey,* for complainant.

*E. Metcalf* and *E. Merwin,* for respondents.

Heard by COLT and CARPENTER, JJ.

CARPENTER, J. The respondents in this case, on March 3, 1883, commenced, in the supreme court of the state of Rhode Island, an action of debt on a bond dated August 24, 1868, and executed by Thomas C. Durant as principal, and the complainant and S. Dexter Bradford as sureties, binding them jointly and severally to Rowland G. Hazard and others in the sum of $53,735; the condition of which is that Durant "shall on his part abide and perform the orders and decrees of the supreme court of the state of Rhode Island in the suit in equity of *Isaac P. Hazard and others* against *Thomas C. Durant and others,* now pending in said court, within and for the county of Newport." The breach assigned in the declaration is that Durant has not performed a decree by which that court, on December 2, 1882, ordered him to pay into its registry the sum of $16,071,659.97.

After oyer prayed and granted, the complainant filed 10 pleas in bar, and the case was removed on his petition into this court, where the respondents filed special demurrers to five of the pleas. These demurrers were sustained in *Hazard* v. *Griswold,* 21 Fed. Rep. 178.

The complainant now brings this bill in aid of his defense to that action. He sets out all the proceedings in the case of *Hazard* v. *Durant* in the supreme court of Rhode Island, and in support of his prayer for an injunction he makes the following allegations:

"Further complaining, your orator says that, by the laws of the state of Rhode Island, a stockholder in a corporation could not maintain in the said supreme court of Rhode Island, either in equity or at law, in his own name, a suit founded on a right of action existing in the corporation itself, and in which the corporation is the appropriate plaintiff, unless there exists, as the foundation of the suit, some action, or threatened action, of the managing board of directors or trustees of the corporation, which is beyond the authority conferred on them by their charter or other source of organization; or such a fraudulent transaction completed or contemplated by the acting managers in connection with some other party, or among themselves, or with other shareholders, as will result in serious injury to the corporation, or to the interest of the other shareholders; or where the board of directors, or a majority of them, are acting for their own interest in a manner destructive of the corporation itself, or of the rights of the other shareholders; or where the majority of shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a court of equity; or unless the suit should be founded on a state of facts in which, to prevent irremediable injury or a total failure of justice, the said court would be justified in exercising its powers: whereas, your orator asserts, on information and belief, that in the said suit in equity of *Isaac P. Hazard and others* against *Thomas C. Durant and others* no such foundation existed, nor did any such state of facts exist.

"Further complaining, on information and belief, your orator says that before commencing said suit the said Isaac P. Hazard did not, nor did any other stockholder of the said Credit Mobilier of America, exhaust any of the means within his reach to obtain within the said corporation the redress of the grievances alleged in his said bill; that he did not make any effort, either with the managing body of the corporation, or with the stockholders thereof as a body,

to induce it or them to take remedial action against the said Thomas C. Durant; nor did he, or any other stockholder of the said corporation, show to the said supreme court of Rhode Island that he, or any such stockholder, had made any such efforts, or that such efforts were impossible, and that it was unreasonable to require them.

"Further complaining, your orator says that, by the laws of the state of Rhode Island, the said supreme court of Rhode Island had no jurisdiction over the said suit in equity of *Isaac P. Hazard and others* against *Thomas C. Durant and others*, unless the said Isaac P. Hazard, or some other stockholder of the said Credit Mobilier of America, had, before commencing the said suit, exhausted every effort within the said corporation to obtain the redress of the grievances alleged in the said bill.

"And your orator avers, and on information and belief complaining says, that, before bringing said suit in equity in the supreme court of the state of Rhode Island; neither the complainant Isaac P. Hazard, nor any other of the stockholders of the said Credit Mobilier of America, requested the managing committee or the board of directors or the stockholders of said Credit Mobilier of America, in stockholders' meeting assembled, or the said Credit Mobilier of America, at any meeting of said corporation, to begin legal or equitable proceedings, or cause such proceedings to be begun, in the name of the corporation against the said Durant, before himself filing said bill in equity.

"And your orator further shows that, by the laws of the state of Rhode Island, the said supreme court of Rhode Island had no jurisdiction in or over the subject-matter of the said suit in equity upon any ground, whether or not the same has been heretofore alleged herein."

We do not think the bill can be sustained by the general allegation of want of jurisdiction, and the particular allegations above quoted do not, we think, amount to a denial of jurisdiction. The reasoning of *Hazard* v. *Griswold, ubi supra,* is directly in point. Doubtless it was necessary for the supreme court, before proceeding to a decree, to find some unlawful act on the part of the corporation, or its officers or stockholders, and a certain request or demand on the part of the complaining stockholder for redress of his grievance. So, too, it was necessary to find other facts alleged in the bill; especially the fact that the respondent was indebted to the corporation. But to deny the existence of any of these facts, is not to allege want of jurisdiction over the whole subject.

The allegations of the bill deny only the existence of the facts required to justify the stockholders in invoking the exercise of that jurisdiction. Since the supreme court is a court of general equity jurisdiction, and since it does not appear that Durant was not served with process within the jurisdiction of that court, we find no allegation in the bill of want of jurisdiction in the court which entered the decree here sought to be impeached. As in the case of *Hazard* v. *Griswold,* we express no opinion on the question whether want of jurisdiction of the former suit on any ground could be set up in defense to an action on the bond.

The demurrer will be sustained.